IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHELTON HARRISON and ) | |
| BRUCENE HARRISON, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No.: 3:10-CV-0714 |
| v. ) | Judge Trauger |
| ) | |
| ASHLAND GP, LLC, ASHLANDPLACE, LP, ) | |
| and RICHARD F. PRUETT, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the court is the defendants' Motion to Dismiss (Docket No. 19), to which the plaintiffs have responded (Docket No. 23). For the reasons discussed herein, this motion will be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs, Shelton and Brucene Harrison, are residents of Shelby County, Tennessee, and own a parcel of land in Cheatham County, Tennessee.[1] Prior to the events at issue here, this parcel consisted of 135 acres. The parcel bordered, and had access to, Highway 12 South in Ashland City, Tennessee. The property had no other access to a public road.

On September 8, 2004, the plaintiffs entered into a written contract with Progress Capital Partners, LLC (PCP) to sell "a 25 acre parcel of their property that borders on Highway 12 South in Ashland City." (Docket No. 1 at 3.) Because, without this piece of land, the plaintiffs would

---

[1] Unless otherwise noted, the facts are drawn from the Complaint (Docket No. 1).

1

have no access to a public road, the contract for sale contained a provision requiring the purchaser "to provide an access road to the remainder of the Seller's property from Highway 12." (*Id.*)

On September 30, 2004, the plaintiffs executed a general warranty deed (the "Deed") with PCP, which was recorded in the Cheatham County Register's Office. The Deed stated that PCP "agrees to grant" the plaintiffs "a non-assignable and non-transferable right at [PCP's] expense to develop an access road to the remainder of [plaintiff's] existing property from Highway 12 , the location and construction of which shall be subject to [PCP's] sole discretion and approval." (*Id.*)

According to the plaintiffs, title to the 25-acre parcel (along with the obligation to build the access road) later passed to defendant Ashland GP, LLC, (AGP), which is an Alabama LLC. AGP subsequently subdivided the parcel into five lots, known as the "Marrowbone Heights Subdivision." On October 13, 2009, AGP executed a "Designation of Access," which provides a designation of which lots would be used "as the location for construction of the Access from Harrison's retained property to Highway 12." (*Id.* at 4.)

The Designation of Access indicates that the access road will be built through Lots 4 and 5. Alternatively, Lot 2 will be used, if Lot 2 "should hereafter be dedicated as a public roadway connecting to Highway 12" or if the other lot owners all agree that Lot 2 may be used for the road. (*Id.*) The Designation of Access goes on to state that it is binding upon AGP and its successors in title, and "if [AGP] has not constructed the Access prior to its conveyance of Lots 4 and 5, such obligation as prescribed in the Deed shall be performed by the grantee of such Lots." (*Id.*) The subdivision plan and the "Designation of Access" were recorded by the
2

Cheatham County Register's Office.

On October 16, 2009, AGP, via quitclaim deed recorded by the Cheatham County Register's Office, conveyed Lots 1 and 2 to defendant AshlandPlace, LP, (AP) which is also an Alabama business organization. According to the plaintiff, both AGP and AP are "completely control[led]" by defendant Richard Pruett, who is an Alabama resident and "the Managing Member" of AGP, which is a general partner of AP. (Docket No. 1 at 1.) The plaintiff alleges that Pruett "has authorized and personally participated in" the decisions that adversely affected the plaintiffs in this case. (*Id*. at 2.)

The plaintiffs maintain that, since September 30, 2004, they have been "without access" to their "landlocked property." (*Id.* at 5.) Moreover, the plaintiffs claim that "all defendants have consistently refused to provide to the Plaintiffs access to Highway 12 and to construct the access road as required under the terms" of the Deed. (*Id.*) The "Designation of Access," the plaintiffs maintain, is a "sham." (*Id.*)

The plaintiffs allege that they have retained experts to determine the "highest and best use" of their remaining property, and these experts have recommended turning the remaining 110 acres into "upscale residential lots," which would require a certain "location and size of the access road." (*Id.*) The plaintiffs attached to their Complaint a map (the "Map") showing the proposed location of the access road. (Docket No. 1 Ex. A.)

On July 28, 2010, the plaintiffs filed their Complaint. Under the "Causes of Action," the plaintiffs claim that (1) the defendants have denied the plaintiffs the right to enforce the easement created by the Deed; (2) the plaintiffs have an "easement-by-necessity" that the defendants have prevented the plaintiffs from using; and (3) the defendants have breached the

3

terms of the Deed by not acting in good faith.  (Docket No. 1 at 6-7.)  For each of these causes of action, the plaintiffs seek damages, declaratory/injunctive relief, and costs.  (*Id.*)   Under their prayer for relief, the plaintiffs also seek a declaratory judgment "determining the location and size of [the] access road [to be] as specified" on the Map, along with other, alternative, relief, including "other relief as may be appropriate under the circumstances."  (*Id.* at 7-8.)

On September 3, 2010, the defendants moved to dismiss the plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6).  (Docket No. 19 at 1.)

## ANALYSIS

**I.      Standard of Review**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002).  The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)).  The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal

4

conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949-50 (2009).

## II.     The Defendants' Motion to Dismiss

The defendants argue that there are two, independent bases to dismiss the entire Complaint and that, in any event, the claims against defendant Pruett should be dismissed. (Docket No. 19 at 2.) The defendants' position is ultimately without merit.

### A.      First Basis – Failure to State a "Plausible" Claim

The defendants argue that the plaintiffs have failed to state a "plausible" claim for relief. That is, the Deed, which under the doctrine of "merger," is the final, controlling contract between the parties, gives absolute discretion to the defendants as to where and how the access road will be built. (Docket No. 20 at 2, 5-6; *see City of Memphis v. Moore*, 818 S.W. 2d 13, 15-16 (Tenn. Ct. App. 1991)). Therefore, the defendants maintain, it is "irrelevant" that the plaintiffs have obtained experts regarding the "highest and best use" of their remaining land (and the corresponding location of the access road consistent with that use), because the defendants ultimately control the location of the road. (*Id.*) In short, "the clear language of the Deed makes Plaintiffs' claims implausible," as the "plaintiffs have no right to determine the location and construction of the access road." (*Id.* at 2, 6.)

The defendants read the Complaint too narrowly. First, as discussed above, a declaratory judgment ordering an access road be created as envisioned in the Map is just one of several alternative forms of relief requested by the plaintiff. (Docket No. 1 at 6-8.) Even if the court concluded that this form of relief was inconsistent with the terms of the Deed, that would not

5

demonstrate that it was "implausible" that the plaintiffs had stated valid causes of action against the defendants. Indeed, the plaintiffs allege that the defendants have denied them access to their easement, and that the defendants have failed to honor the obligations created by the Deed (that is, to build, in good faith, some sort of access). Whether or not the plaintiffs are entitled to the specific declaratory judgment sought in the Complaint is distinct from whether the plaintiffs' Complaint survives Rule 12(b)(6) scrutiny.[2] *Iqbal*, 120 S.Ct. at 1950; *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)("to state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery *under some viable legal theory*")(emphasis added).

The defendants also argue that the plaintiffs' "claims for a common-law easement by necessity are also baseless" because the plaintiffs have already "reserved an access right" by transferring the property in 2004, and, under Tennessee law, "an express easement providing for access abolishes the need for an easement by necessity." (Docket No. 20 at 7 citing *Cellco P'Ship v. Shelby County*, 172 S.W.3d 574, 594 (Tenn. Ct. App. 2005)("an easement by necessity continues until the necessity giving rise to the easement no longer exists," such as when an express easement is formalized.))

This argument is not helpful to the defendants' position. In the Complaint, the plaintiffs allege that the Deed created an easement that the defendants have not allowed the plaintiffs to use. (Docket No. 1 at 6.) But, the plaintiffs implicitly state, even if the Deed did not create such an

---

[2]Similarly, the defendants point out that the "plaintiffs ask for a 'permanent access easement,' but, the Deed makes clear that Plaintiffs' right to access is 'non-assignable and non-transferable.'" (Docket No. 20 at 7.) Again, even if the plaintiffs are not entitled to the precise relief that they seek, that does not mean that the Complaint should be dismissed for wholly failing to state a claim.

6

easement, the circumstances of this case dictate that the court should find that the plaintiffs have an "easement-by-necessity," which the defendants have prevented the plaintiffs from using. (*Id.*)[3]  If, as the defendants argue, the plaintiffs do not qualify for an easement-by-necessity because there is an express easement, then the plaintiffs still claim that the defendants have prohibited the plaintiffs from using that easement.  Either way, a claim is still stated against the defendants for violating the plaintiffs' property rights.

Finally, the defendants argue that they have complied with the covenant of good faith and fair dealing implied in every contract (here, the Deed) under Tennessee law because they issued a Designation of Access.  (Docket No. 20 at 8 citing *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996)("there is implied in every contract a duty of good faith and fair dealing in its performance and enforcement . . . the court must judge the performance against the intent of the parties as determined by a reasonable and fair construction of the language of the instrument.")

In this final argument, the defendants, without any support from the record, are simply arguing the merits of the case.  The plaintiffs, in essence, allege that the defendants have violated the terms of the Deed by, in bad faith, not building the access road and by creating a "sham" Designation of Access that does not result in the road actually being built.  Under any reasonable interpretation of *Twombly* and *Iqbal*, this states a valid breach of contract claim, and the defendants' arguments that they have acted in good faith are appropriately advanced at the summary judgment stage or at trial.

---

[3] An easement-by-necessity may be found when: "1) the titles to the two tracts in question [] have been held by one person; 2) the unity of title [has] been severed by a conveyance of one of the tracts; [and] 3) the easement [is] necessary in order for the owner of the dominant tenement to use his land with the necessity existing both at the time of the severance of title and the time of exercise of the easement."  *Cellco*, 172 S.W.3d at 592.

7

**B.     Second Basis – Failure to Bring the Claims in the Proper Forum**

The defendants claim that, under Tennessee law, the plaintiffs cannot achieve their requested relief in this forum. In support of this view, the defendants rely heavily on *West Meade Homeowners Ass'n v. WPMC, Inc.*, 788 S.W.2d 365, 365-67 (Tenn. Ct. App. 1989). In that case, the court affirmed that, "by statute, the local municipal planning commission has sole and exclusive power to approve or disapprove subdivision plats for real estate developments." *See also* T.C.A. § 13-4-302(c)(1)(once a subdivision plat is recorded, amendments, modifications or corrections to that plat must be approved by the relevant planning commission before the revised subdivision plat can be recorded); T.C.A. § 13-4-307(street and road improvements within a subdivision generally require the involvement and approval of the relevant planning commission)

In *West Meade*, the plaintiffs, who were property owners in the area, sought to enjoin the development of a subdivision because they feared it would cause damage to their property, and they brought their lawsuit before the defendants submitted their proposed subdivision plat to the relevant planning commission. *Id.* The trial court dismissed the case, and the court of appeals affirmed: "since the local agency which is vested with exclusive authority over subdivision approvals has neither acted nor been requested to act, the plaintiffs' claim that the property is unsuitable for development is premature and presented to the wrong forum." *Id.*

The defendants argue that, as in *West Meade*, the plaintiffs' claims are premature and presented to the wrong forum. (Docket No. 20 at 9-10.) That is, the current subdivision plat for "Marrowbone Heights" has been recorded, and, pursuant to statute, it cannot be amended and re-recorded without planning commission approval (which the plaintiffs do not claim to have sought). As, the defendants claim, granting the declaratory judgment sought by the plaintiffs would result in

8

amending the subdivision plat to include a new, permanent easement, the relief sought by the plaintiffs can only be obtained from the relevant planning commission, and, therefore, this case should be dismissed. (*Id.*) In response, the plaintiffs argue that they "do not seek any modification of any subdivision plat. All they seek is an access road." (Docket No. 23 at 2.)

The defendants' argument is not persuasive. As discussed above, even if some of the plaintiffs' requested relief is not viable, that does not mean that the entire Complaint should be dismissed. The plaintiffs, with supporting facts, allege that the defendants have denied the plaintiffs their property rights and failed to honor the terms of the Deed. The plaintiffs' allegations plainly state a plausible claim for relief, even if certain forms of requested relief may not be available.

### C. Claims Against Pruett

Finally, the defendants argue that all claims against defendant Pruett should be dismissed because "Pruett's only involvement with this matter is by virtue of his status as the Managing Member of [AGP]," and, under Alabama law, members and managers of limited liability companies are not "proper parties" to a proceeding against the LLC, unless the object of the suit is to enforce a member's rights against the LLC.[4] (Docket No. 20 at 10 citing Ala. Code. § 10-12-18). Moreover, under Alabama law, members of an LLC are not generally liable for the debts and obligations of the LLC. Ala. Code. § 10-12-20.

As the defendants recognize, one exception to the general rule against individual liability

---

[4] The defendants do not explain why Alabama law applies, and the plaintiffs argue this section of the briefing from the perspective of Tennessee law. (Docket No 23 Ex. 1 at 2.) The defendants appear correct that Alabama law applies. Tennessee has adopted the "internal affairs doctrine," and, under this doctrine, "an issue concerning the individual liability of a shareholder or officer for the corporation's debts is considered an issue regarding the 'internal affairs' of a corporation that may be governed by the law of the state of incorporation," which, here, is Alabama. *Amberjack, Ltd. v. Thompson*, 1997 WL 613676, *8-9 (Tenn. Ct. App. Oct. 7, 1997).

9

arises when the court determines that it is appropriate to "pierce the corporate veil." (Docket No. 20 at 11.) In *Filo Am., Inc. v. Olhoss Trading, Co., LLC*, 321 F. Supp.2d 1266, 1269 (M.D. Ala. 2004), the district court, interpreting Alabama law, concluded that it was appropriate, in certain situations, to pierce the corporate veil of an LLC and impose individual director liability. *Id.* Specifically, "[t]he factors that Alabama courts consider in deciding whether it is appropriate to 'pierce the veil' of a corporation are: (1) inadequacy of capital; (2) fraudulent purpose in conception or operation of the business; (3) operation of the corporation as an instrumentality or alter ego. . . . While some of these factors [such as 'inadequacy of capital'] may not apply to LLCs in the same way they apply to corporations, . . . a fraudulent purpose in the conception or operation of an LLC should certainly be a valid reason for 'piercing' the LLC's 'veil.'" *Id.* at 1269-70.

The defendants maintain that the plaintiffs' allegations against Pruett do not raise a "plausible" case for piercing the corporate veil because the plaintiffs merely alleged that Pruett ran the defendant businesses, with no allegations that the businesses are fraudulent or that they are shams. (Docket No. 20 at 11-12.)

Again, the plaintiffs have alleged that Pruett "completely controls the business affairs" of both ADP and AP and that he "personally participated in the decisions to deprive the plaintiffs of access to their property." (Docket No. 1 at 1-2.) On these allegations, the court cannot conclude that it would be "implausible," once discovery is conducted in this case, to pierce the corporate veil if the evidence revealed that Pruett, for instance, ran these businesses as his "alter ego."

Also, the defendants fail to point out that Ala. Code § 10-12-20(c) states that a member of an LLC "may become liable by reason of the member's own acts or conduct." The Commentary states that the purpose of this provision is to retain individual liability for a member's own acts to

10

the extent such actions would be actionable if the member were acting in an individual capacity. Given that the plaintiffs have alleged that Pruett personally engaged in the decisions that adversely affected the plaintiffs, the court cannot conclude, at this point, that liability is not plausible against Pruett under this provision.

## CONCLUSION

For the reasons discussed herein, the defendants' Motion to Dismiss will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

11